Mike FAIR and Camilla
Nockels, Petitioners,

v.

The STATE ELECTION BOARD OF OKLAHOMA and Betty McElderry, Chair; Mona Lambird, Vice-Chair; George Krumme, Member, Respondents.

No. 83968.

Supreme Court of Oklahoma.

Aug. 1, 1994.

As Corrected Aug. 2, 1994.

---

**1224**

### *ORDER*

SIMMS, Acting Chief Justice.

We assume original jurisdiction to consider this matter involving a ruling by the State Election Board and decide the issue whether that portion of Article 5, Section 23 of the Constitution of the State of Oklahoma which provides that no member of the Legislature shall, during the term for which he was elected, be elected to any office in the State, the emoluments of which shall have been increased during his term of office, is in conflict with the First and Fourteenth Amendments to the United States Constitution.

Petitioners state that at a hearing conducted July 20, 1994 on a Contest of Candidacy filed against petitioner Fair, the State Election Board incorrectly found that Petitioner Fair, as a mid-term State Senator during the 1994 legislative session that enacted a pay increase for the office of Labor Commissioner to be effective in January 1995, was prohibited by Article 5, Section 23 of the Constitution of the State of Oklahoma from being a qualified candidate to seek the office of Commissioner of Labor. Petitioners' sole contention is that Article 5, Section 23 of the Oklahoma Constitution is in conflict with the First and Fourteenth Amendments to the United States Constitution and is therefore unconstitutional. The First and Fourteenth Amendment rights they seek to vindicate are: 1) Petitioner Fair's right to equal treatment as a member of the state legislature to be a candidate for Commissioner of Labor, and 2) Petitioner Nockels' First Amendment right to vote for and support the candidate of her choice. Petitioners ask this Court to issue a writ of mandamus to the State Election Board ordering them to place Petitioner Mike Fair's name on the state election ballot as a Republican candidate for Commissioner of Labor for the Primary Election scheduled for August 23, 1994, and the Runoff Primary and General elections should he receive enough votes to qualify.

Petitioners' argument is that because the terms of state representatives expire in November after the general election, as do the terms of twenty-four Senators whose terms happen to expire in November of gubernatorial election years, and because the terms for Governor, Lieutenant Governor, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction and Commissioner of Labor do not begin until the following January, only the twenty-four Senators who are at mid-term during gubernatorial elections years are prevented by Article 5, Section 23 from becoming candidates for the listed statewide offices.

After weighing all the factors, we find that Article V, § 23 of the Oklahoma Constitution does not place an unconstitutional burden on the voting and associational rights of Senator Fair or voter Nockels, and is not violative of the First and Fourteenth Amendments to the United States Constitution. The Petition for Writ of Mandamus is denied.

The Constitution of the United States, Article I, Section 6 contains a similar provision resulting in a similar classification. Article I,

Section 6 of the Constitution of the United States provides that no Senator or Representative shall, during the time for which he was elected, be appointed to any civil office under the authority of the United States, which shall have been created, or the emoluments whereof shall have been increased during such time. The Twentieth Amendment to the Constitution of the United States sets out that the two-year terms of the members of the House of Representatives and the terms of those Senators whose six-year terms are expiring, shall end at noon on January 3, before the new presidential term begins on January 20. With such classification appearing in the United States Constitution, we cannot find that our constitutional provision is violative thereof.

In *State ex rel. Anderson v. Chapman*, 86 Wash.2d 189, 543 P.2d 229 (1975) the constitutional provision under attack by two mid-term legislators was virtually identical to Article V, § 23 of the Oklahoma Constitution. The Washington Supreme Court disposed of the Equal Protection violation argument by noting the "substantially identical" provision contained in the Federal Constitution. Likewise, in *Hall v. Baum*, 452 S.W.2d 699 (Tex. 1970), *appeal dismissed for want of substantial federal question*, 397 U.S. 93, 90 S.Ct. 818, 25 L.Ed.2d 79, involving a similar Constitutional provision, the Texas Supreme Court observed that if the Texas constitutional provision creates an unreasonable classification by not applying to all legislators, then the Constitution of the United States does so as well. Neither do we find that petitioners' First Amendment rights have been violated because petitioner's rights have not been impermissibly burdened. See, *Burdick v. Takushi*, — U.S. —, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

1. Article 5, § 23, Okl. Const., states in pertinent part:
   "No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any office or commission in the State, which shall have been created, or the emoluments of which shall have been increased, during his term of office...."

2. *Gragg v. Dudley*, 143 Okl. 281, 289 P. 254, 256–57 (1930).

3. For a discussion of impermissibly underinclusive classifications see *Orr v. Orr*, 440 U.S. 268,

## ORIGINAL JURISDICTION ASSUMED; PETITION FOR WRIT OF MANDAMUS DENIED.

HODGES, C.J. and HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ., concur.

OPALA, J., dissents.

LAVENDER, V.C.J., disqualified.

OPALA, Justice, dissenting.

The court holds today that Senator Mike Fair is ineligible as a candidate for the office of labor commissioner. I cannot accede to its order. The dispositive issue in this original proceeding is whether this court's Art. 5, § 23 [1] jurisprudence creates a classification that will not pass muster under the Equal Protection Clause [EPC] of the Fourteenth Amendment to the U.S. Constitution. While Art. 5, § 23 is not facially infirm, the court's construction of its provisions in *Gragg v. Dudley* [2] [as well as in the progeny of that case] creates a *fatally underinclusive class* [3] of legislators intended to be disabled by that section for appointment or election to certain public offices.

### I

## *GRAGG* CRAFTS AN IMPERMISSIBLY UNDERINCLUSIVE CLASS OF LAWMAKERS WHOSE MEMBERSHIP IS DENIED EQUAL PROTECTION OF THE LAWS

Mike Fair [4] [Fair, petitioner or candidate] declared himself on July 8, 1994 to be a Republican candidate for the office of commissioner of labor. During its 44th session—when Fair was one of its members—the Legislature enacted a pay raise for the labor commissioner's office. The State Election

272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979); *Stanton v. Stanton*, 421 U.S. 7, 13–14, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975).

4. Mike Fair is a senator from district number 47 whose term of office began January 12, 1993. In common parlance he is now a "mid-term" senator, i.e., one of 24 Oklahoma senators whose terms of office are bisected by the general election. The other 24 senators' terms coincide with those held by the executive state officeholders.

Board [Board] ruled on July 20, 1994 that Art. 5, § 23 bars him from seeking that office. Fair argues in this case that the Board's order accords him treatment that is invidiously disparate from that which is due other similarly situated legislators of the same session.

The primary objective of the § 23 clause here in contest is the exclusion from appointive as well as elective offices of those lawmakers who were in session when an office was created or its emoluments increased.[5] The aim of the restriction in question was to eliminate improper bias from a legislator's pattern of voting and to secure to the electorate a representation that is free from the quest of personal gain.[6] As adopted, § 23 applied equally to *all* members of the Legislature. It precluded all of them as *a single class* from *both seeking and taking office, either through appointment or election,*[7] *during the term "for which he [or she] was elected."* When so applied, § 23 could not be said to "unfairly or unnecessarily burden the availability of political opportunity"[8] nor to lack attributes which "bear some rational relationship to a legitimate state end."[9]

By removing the § 23 disability from *all* House members and from *all* senators whose terms coincide with statewide executive branch offices, *Gragg* has confined the constitutional disqualification in question to *24 mid-term senators—a small sub-class* of the 149-member legislative assembly.[10] When courts apply to similarly situated lawmakers different rules of accessibility to public offices, both the Fourteenth Amendment of the U.S. Constitution and the fundamental law[11] of this State are offended.[12] Had *Gragg* extended the § 23 disability to *all* legislators and thus prevented them from seeking the prohibited offices *within the term for which they were elected,*[13] the class would have remained untainted by a constitutionally flawed incidence of disability.

## II

## THE LEGAL AUTHORITY FOR TODAY'S PRONOUNCEMENT DOES NOT ADDRESS THE ISSUES PRESENTED BY FAIR'S QUEST FOR MANDAMUS

The court today relies upon two cases[14] to overcome Fair's contention that he was denied equal protection by the Board's imposition of the § 23 disability upon his candidacy. In both cases the supreme courts of Washington and Texas drew analogy between local constitutional provisions and the text of Arti-

---

5. *Baskin v. State,* 107 Okl. 272, 232 P. 388, 390 (1925).

6. *See* R.L. WILLIAMS, THE CONSTITUTION AND ENABLING ACT OF THE STATE OF OKLAHOMA ANNOTATED, 40–41 (1912). *See also* the commentary of Story, J., on *Article I, Section 6, U.S. Const.,* in *State ex rel. Ryan v. Boyd,* 21 Wis. 208, 210, 212 (Wisc.1848).

7. *Election* includes registration, nomination, balloting and the manner in which votes are counted and made known. *See Daxon v. State Election Board,* Okl., 582 P.2d 1315, 1317 (1978).

8. *Clements v. Fashing,* 457 U.S. 957, 964, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982).

9. *Id.,* 457 U.S. at 963, 102 S.Ct. at 2843.

10. By restricting the incidence of the constitutional ineligibility clause to one-half of the Senate membership, *Gragg* succeeds in making § 23 ineffective as a barrier against all lawmakers' conduct for personal gain.

11. *See* Art. 2, § 7, Okl. Const. Its pertinent terms are:

"No person shall be deprived of life, liberty, or property without due process of law."

12. Like its federal counterpart, the State Due Process Clause embodies an anti-discrimination component that protects against unequal treatment. *Thayer v. Phillips Petroleum Co.,* Okl., 613 P.2d 1041, 1045 (1980) [Opala, J., dissenting].

13. "[D]uring the term for which he was elected", as used in § 23, has been determined to extend the § 23 disability to the last day of the constitutionally mandated term of the lawmaker. *Baskin, supra* note 5 at 389. In *Baskin* this court would not allow a legislator to escape the § 23 disqualification by *resigning* before he was appointed to a judicial office. *Id.* at 390.

14. *State ex rel. Anderson v. Chapman,* 86 Wash.2d 189, 543 P.2d 229 (1975), and *Hall v. Baum,* 452 S.W.2d 699 (Tex.1970).

cle I, Section 6, U.S. Const.—the Ineligibility Clause.[15] The Founding Fathers of this Nation limited the impact of the Article I, Section 6 disability[16] *to appointments.* In neither of these cases did the petitioners argue that the state constitutional provision like the one in question here resulted in an *impermissibly underinclusive classification* that denied them equal protection of the law. I hence view the authority invoked by the court as inapposite to the question tendered by Fair.

### III

### SUMMARY

The petitioner requests that his name be placed on the ballot for the office of labor commissioner. He is one of a class of 149 legislators during whose office term the salary for the labor commissioner's office was increased. Under today's rationale 125 members of this single class can seek the office to which Senator Fair aspires without offending the § 23 mandate; Senator Fair and 23 other similarly situated mid-term senators may not. *Gragg's* teaching, which the court follows today, created a sub-class singled out for treatment that is invidiously disparate from that accorded other like-situated lawmakers.

Because I can countenance neither *Gragg* nor its legacy of disparity in the treatment of like-affected lawmakers, I would today (a)

declare that to impose upon Senator Fair the § 23 ineligibility status and disqualify him as a candidate for the office of labor commissioner would offend against the Equal Protection Clause and against Oklahoma's own anti-discrimination component in the Due Process Clause of Art. 2, § 7, Okl. Const., and (b) overrule *Gragg* prospectively to depart from its teaching of a constitutionally flawed classification by holding that the provisions of § 23 here in contest prohibit *all* lawmakers from *seeking or taking,* by appointment or election,[17] any public office[18] created during their term of office[19] or one whose emoluments were increased during this period.

---

**15.** *See Anderson, supra* note 14, 543 P.2d at 233, and *Hall, supra* at 703–704.

**16.** The pertinent terms of Art. I, Sec. 6, U.S. Const., state:

"No Senator or Representative shall, during the Time for which he was elected, *be appointed* to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been [i]ncreased during such time; ...." [Emphasis added.]

For a discussion of the Ineligibility Clause's history see *Vreeland v. Byrne,* 72 N.J. 292, 370 A.2d 825, 832–33 (1977).

**17.** *See supra* note 7.

**18.** I would reach this result by broadly interpreting the § 23 language that proscribes a lawmaker's in-term election to a prohibited office to include *any* in-term act by a legislator-candidate in the process of *standing* for a constitutionally interdicted election. For a definition of election

see *supra* note 7. When a statute [or a state constitutional text] is susceptible of more than one meaning, it must be given that which makes it free from [federal] constitutional doubt rather than one which would make it fraught with fundamental-law infirmities. *Simpson v. Dixon,* Okl., 853 P.2d 176, 182 (1993); *Ricks Exploration Co. v. Oklahoma Water Resources Board,* Okl., 695 P.2d 498, 504 (1985); *Earl v. Tulsa County District Court,* Okl., 606 P.2d 545, 547–48 (1980).

**19.** The scope of a disability similar to the § 23 disqualification was addressed in *Vreeland, supra* note 16 at 831. The New Jersey Supreme Court held:

"[T]he phrase, 'the term for which he [legislator] shall have been elected' is significant in two respects and in no other. It fixes and limits the time span within which legislative action must be taken if it is to be inhibiting, and similarly *fixes and limits the time span during which the resulting ineligibility shall persist.*" [Emphasis mine.]