**BASKIN v. STATE ex rel. SHORT, Atty. Gen.**

No. 15077—Opinion Filed Jan. 2, 1925.

(Syllabus.)

**States—Members of Legislature— Illegality of Appointment to Other Office.**

Section 23, article 5, of the Constitution of this state provides as follows: "No member of the Legislature shall * * * receive any appointment from the Governor, the Governor and Senate or from the Legislature during the term for which he had been elected. * * *" Held, that under this constitutional provision the disability of a member of the Legislature to hold office by virtue of appointment from the Governor does not cease until the expiration of the full period of time for which he was elected.

Error from District Court, Oklahoma County; A. S. Wells, Assigned Judge.

Action by the State on relation of George F. Short, Attorney General, against Charles H. Baskin. Judgment for plaintiff, and defendant brings error. Affirmed.

Floyd D. Calvert, Freeling, Hood & Howard, and Warren K. Snyder, for plaintiff in error.

George F. Short, Atty. Gen., for defendant in error.

McNEILL, J. At the general election held in November, 1922, Charles W. Baskin was elected to the office of Representative from Nowata county for a term of two years. Pursuant to such election he duly qualified and entered upon the discharge of his duties at the commencement of the session for the year 1923 and served in that capacity during the regular session of the Legislature ending March 31, 1923, and resigned from said office on the 7th of April, 1923.

In March, 1923, a vacancy occurred in the Supreme Court, caused by the death of

the Chief Justice, John H. Pitchford, and on the 7th day of April, 1923, the Governor appointed Honorable Charles W. Mason, who was district judge of the Second judicial district, to fill the vacancy on the Supreme Court. This created a vacancy in the district court of the Second judicial district, and on said 7th day of April, 1923, the Governor appointed the Honorable Charles H. Baskin to fill said vacancy. The Governor sometime thereafter directed the Attorney General to institute this proceeding to test the qualifications of Baskin to hold said office. The case was instituted in Oklahoma county against Baskin, who entered his general appearance. The question for determination under the agreed facts is one of law. The trial court rendered judgment against Baskin removing him from office, and from said judgment the said Baskin appealed to this court.

For reversal it is contended, the defendant having resigned as a member of the Legislature, he was not prohibited nor disqualified under section 23, article 5, of the Constitution from holding said office. The case depends upon the construction of section 23, article 5, of the Constitution of the state of Oklahoma, which reads as follows:

"No member of the Legislature shall, during the term for which he was elected, be appointed or elected to any office or commission in the state which shall have been created or the emoluments of which shall have been increased, during his term of office, nor shall any member receive any appointment from the Governor, the Governor and Senate, or from the Legislature, during the term for which he shall have been elected, nor shall any member during the term for which he shall have been elected, or within two years thereafter, be interested, directly or indirectly, in any contract with the state, or any county or other subdivision thereof, authorized by law passed during the term for which he shall have been elected."

This section of the Constitution prohibits members of the Legislature from holding other offices, or receiving appointment to certain offices or being interested in certain contracts. The portion of the section involved in this case reads as follows:

"Nor shall any member receive any appointment from the Governor, the Governor and Senate, or from the Legislature, during the term for which he shall have been elected."

To us, this language is plain and unambiguous, and the general rule of law is, when a statute or Constitution is plain and unambiguous, the court is not permitted to indulge in speculation concerning its meaning nor whether it is the embodiment of great wisdom. A Constitution is intended to be framed in brief and precise language, and represent the will and wisdom of the Constitutional Convention, and that of the people who adopted it. This section of the Constitution is a part of the organic law of the state, and in plain language prohibits Senators and Representatives from holding any other office in the state "during the time for which he was elected." This language is too sweeping and too plain to be disregarded.

It is contended that the Honorable Charles H. Baskin having resigned his office as Representative, the Constitutional provision has no application to this case. With this we cannot agree. The time for which the defendant was elected was the entire constitutional term of two years, and whether he resigned during that time or not he was not permitted to hold any other office under the authority of this state during such entire term. The members of the Constitutional Convention in framing and drafting said section made no exceptions to the disqualifications of the members of the House or Senate from receiving certain appointments or being elected to certain offices or being interested in certain contracts, whether they resigned or not. It is not within the province of the court to read an exception in the Constitution which the framers thereof did not see fit to enact therein. This exact question was discussed in the case of State ex rel. Child v. Sutton (Minn.) 65 N. W. 262, 30 L. R. A. 630.

A very able brief has been filed by the defendant referring to the cases above cited and numerous other cases and calling attention to the fact that the Constitutions of Minnesota and various other states are different from the Oklahoma Constitution, as those Constitutions, while using similar language, contained the further provision that any vote for such appointment, and all votes given for any such member, or for any such office or appointment shall be void. That provision of the section of the Constitution does not relate to the qualifications of the member, but makes his appointment void. Our Constitution contains no such provision. In other words, instead of making the appointment void, the appointment would be voidable, just the same as a person who is elected to office who has taken and assumed the duties of the office; his official acts while in office would not be void. While a different rule might prevail where the Constitution made the appointment void, but our Constiution contains no such provision. There was no doubt a very good reason for the framers of our Constitution eliminating this provision, for if it contained such a provision, it might be

very doubtful whether the official acts of such officer would be valid, but where the Constitution, like ours, has no such provision, those questions are eliminated.

The case of Palmer v. State (S. D.) 75 N. W. 818, is also cited. In that case a member of the Legislature voted for an appropriation for certain money for the Railroad Commission, to employ attorney to assist the commission in reducing rates. After the Legislature adjourned, the Railroad Commission employed a member of the Legislature as such attorney. The Constitution of that state, in so far as it prohibits a member from receiving appointments, is almost 'identical with our Constitution and reads as follows:

"Nor shall any member receive any civil appointment from the Governor and the Senate or from the Legislature during the term for which he shall have been elected. * * * Nor shall any member of the Legislature during the term for which he has been elected or within one year thereafter. be interested, directly or indirectly, in any contract with the state or any county thereof, authorized by any law passed during the term for which he has been elected."

The court in that case used this language:

"If the employment of plaintiff by the commissioners did not create contractual relations with the state, it is impossible to comprehend how it can be liable in this action. If the board was authorized to employ counsel at the expense of the state, and the statute cited clearly clothed it with such authority, such employment created a contract with the state."

The constitutional provisions were enacted for the protection and safety of our government. The basic principle of our constitutional government is the fact that it is comprised of three separate and distinct departments: First, the Legislative; second, the executive, consisting of the Governor and various executive officers: and third, the judiciary. These three branches of our government are separate and distinct, each created for a separate and distinct purpose; the legislative, to enact laws and make appropriations to meet the necessary needs of the state; the executive, to execute and carry into effect the laws; and the judiciary, to construe the same. The above provision of the Constitution was enacted to prevent the members of the legislative branch of the government from occupying a dual position and to prohibit members of the Legislature from deriving directly or indirectly any pecuniary benefit of legislative enactments or appropriations

made by them. The members of the Legislature are the sole judges, subject to a veto of the Governor, of the amount to be appropriated each year to carry into effect the executive and judicial departments. This act was to prevent and prohibit members of the Legislature, after making appropriations for other departments, and after the adjournment of the Legislature, from accepting employment from that branch of the government, and receiving a pecuniary benefit from the money they appropriated. It is a general rule of construction of the statutes that the courts will follow the construction placed upon the law by executive departments, whose duty it is to interpret the same, unless that construction is clearly erroneous, and in the past it has been a practice to construe the constitutional provision and hold it was not violated by a member of the Legislature after appropriating money for certain departments to accept employment under that department. and in view of that practice the court should give a very liberal construction to the Constitution, as the emoluments of the office of a judge are fixed and certain, and would not be against the spirit of the law as much as the construction that has been placed upon the Constitution in the past by the various executive departments. This is no doubt true, but that such construction as contended for is clearly against the spirit of the Constitution cannot be doubted. Certainly it was never intended that the appropriations should be made in a manner that would permit a member of the Legislature to vote for an appropriation, and then for that department to employ him and permit him to receive the benefits of the appropriation made by himself. Such was the holding in the case of Palmer v. State. supra. While not violating the same provision of the section as the appointment does, it does violate other provisions.

It is true a person might honestly fulfill his duty as a member of the Legislature regarding the appropriations, and emoluments of certain offices, without any idea of accepting an employment from that department, and after the Legislature adjourned be employed in that department, but such a construction would open the gates of the government, and is a direct violation of the spirit and intent of the Constitution. While it is true the compensation to the Legislature is small and in most cases perhaps does not pay his actual expenses, still the Constitutional Convention thought best to place safeguards around the interests of the state and thus prevent practices which could so easily be abused.

The case of State ex rel. Owen v. Carter, 77 Okla. 28, 186 Pac. 454. is cited supporting the contention of the plaintiff in error. In that case the court was construing section 10, article 23, of the Constitution, and section 16. Schedule to Constitution, which affects the salaries of the Justices of the Supreme Court and the district judges at so much per annum "until changed by the Legislature." No such provision is contained in the constitutional provision under consideration. nor is the case of Carter v. Taylor, 77 Okla. 31, 186 Pac. 464, in point.

The case of State ex rel. West v. Breckinridge, 34 Okla. 649. 126 Pac. 806, is also cited. That case has no application to the question in this case, because the statute provided as follows:

"Nor shall any county attorney, while in office, be eligible to or hold any judicial position whatever."

If the statute provided for "during the term for which he was elected," then that case would be in point. That case deals with the fact that the county attorney received his appointment but resigned before taking the oath of office. This case would be applicable if the language of the statute and Constitution were even similar, but they are not.

Since this case has been appealed and since the plaintiff in error has filed his brief his disqualification to hold the office has been removed, for the time to which he was elected to the Legislature has terminated, and it may be said at this time the respondent is qualified to hold the office. This is true, the disqualification of the respondent has been removed, but the judgment herein is based upon the facts as they existed at the time of the rendition of the judgment in the lower court. While the respondent is now qualified to receive an appointment. for his disqualification has been removed, still at the date of the trial in the lower court and the time of receiving the appointment he was ineligible.

It is unnecessary to discuss the other cases or authorities cited or refer further to the distinction between Constitutions which contain a provision providing that all votes for such appointments are void. The only difference relates to official acts while in office, and under a Constitution like ours the person holding the office would be a de facto officer and his acts would be valid and binding.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, BRANSON, WARREN, and GORDON, JJ., concur.

Note.—See under (1) 36 Cyc. p. 857.